**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| **MICHAEL McCOY,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **CASE NO: 1:25-cv-5–WLS** |
| **DOUGHTERY COUNTY, GEORGIA, *et al.*,** | : | |
| **Defendants.** | : | |

## ORDER

Before the Court is Defendants' Motion for Judgment on the Pleadings (Doc. 23) ("Motion"). After review, the Court denies the Motion.

## I. PROCEDURAL BACKGROUND

Plaintiff Michael McCoy ("Plaintiff" or "McCoy") commenced this action by filing a complaint on January 8, 2025 against his former employer, Dougherty County, Georgia ("Dougherty County"), and the following members of the Board of Commissioners of Dougherty County, in their individual and official capacities: Lorenzo Heard, Gloria Gaines, Clinton Johnson, and Victor Edwards (collectively the "Defendant Commissioners" and together with Dougherty County, the "Defendants").

The operative pleadings in this case are Plaintiff's Second Amended Complaint and Answer and Defenses to Defendants' Counterclaim (Doc. 22) ("Second Amended Complaint") filed September 25, 2025, and Defendants' Consolidated Answer to Plaintiff's Amended Complaint and Restated Counterclaim for Equitable Relief to Nullify Employment Agreement (Doc. 15) ("Answer and Counterclaim") filed July 14, 2025.[1] The Counterclaim is filed only by Dougherty County.

[1] On June 9, 2025, Defendants filed an answer and counterclaim for declaratory and injunctive relief (Doc. 11). On June 30, 2025, Plaintiff filed his first amended complaint and answer and defenses to Defendants' counterclaim (Doc. 14). These pleadings were replaced in their entirety by the operative pleadings.

In the Second Amended Complaint, Plaintiff asserts the following claims: Count I: Breach of Contract as to Defendant Dougherty County; Count II: Attorneys' Fees and Costs under O.C.G.A. § 13-6-11 as to Defendant Dougherty County; and Count III: Claim for Retaliation in Violation of 42 U.S.C. § 1983 and Equal Protection Claim. Plaintiff's claims flow from the alleged wrongful termination of Plaintiff as Dougherty County Administrator effective June 26, 2023.

The Defendants deny Plaintiff was wrongfully terminated. In its Restated Counterclaim (Doc. 15 at 22–28), Dougherty County requests equitable relief in the form of declaratory judgment, nullification and enjoinder from the enforcement of McCoy's 2023 Employment Agreement, as defined below.

In response to the Second Amended Complaint, Defendants filed the instant Motion (Doc. 23) seeking judgment on the pleadings. Plaintiff filed his Response (Doc. 24) in opposition thereto, and Defendants filed their timely Reply (Doc. 25). The matter is now ripe for resolution.

## II. STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

> Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. The standard of review for a motion for judgment on the pleadings is almost identical to that used to decide motions to dismiss. Fed. R. Civ. P. 12(b)(6) motions to dismiss standards therefore apply to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings. When ruling on a motion to dismiss for failure to state a claim, the court must view the allegations of the complaint in the light most favorable to the plaintiff and consider the well pleaded allegations of the complaint as true.

*Bank of Camilla v. St. Paul Mercury Ins. Co.*, 939 F. Supp. 2d 1299, 1303 (M.D. Ga.), aff'd, 531 F. App'x 993 (11th Cir. 2013) (per curiam) (cleaned up); *see also Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 940 (11th Cir. 2023) (stating "[j]udgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. We must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party.") (internal quotation marks and citations

omitted). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). Pursuant to Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Further, "on a motion for judgment on the pleadings, documents that are not a part of the pleadings may be considered, as long as they are central to the claim at issue and their authenticity is undisputed." *Perez*, 774 F.3d at 1340 n.12.

## III. FACTUAL BACKGROUND

### A. Second Amended Complaint

With the above standard in mind, the Court briefly recounts the allegations in the Second Amended Complaint.

In January 2019, the Dougherty County Board of Commissioners ("Board") hired Plaintiff as County Administrator for Dougherty County. (*Id.* ¶ 10). For each year he was employed as County Administrator, Plaintiff entered into a written employment contract with the Board. (*Id.* ¶ 13). The last employment contract entered into between Plaintiff and the Board was for a term of employment beginning December 12, 2022, and ending December 31, 2023, which was executed by Plaintiff and Christopher S. Cohilas on behalf of the Dougherty County Board of Commissioners ("2023 Employment Agreement"). A copy of the 2023 Employment Agreement is attached to Defendants' Answer and Counterclaim. (*See* Doc. 15-1). One seat on the Board changed between the time the 2023 Employment Agreement was executed in December 2022 and January 1, 2023, when Defendant Lorenzo Heard was sworn into office as Chairman, replacing Christopher Cohilas. (Doc. 22 ¶ 25 & Doc. 15 ¶ 26).

In Spring 2023, Plaintiff hired a Caucasian Assistant County Administrator at a salary that fell within the 2023 pay scale that had been approved by the Board, which included the Defendant Commissioners. (Doc. 15 ¶¶ 29–30). Plaintiff alleges that the Defendant Commissioners, who are all African Americans, were upset that Plaintiff, who is also African American, had hired a Caucasian Assistant County Administrator. (*Id.* ¶¶ 28, 31, 33). Plaintiff further alleges that he had previously hired African Americans to fill positions, including a lead Human Resources role, without being questioned by the Defendant Commissioners. (*Id.* ¶ 32).

On June 5, 2023, the Defendant Commissioners voted on the record in a closed session to terminate Plaintiff's employment because of Plaintiff's "decision to appoint an Assistant County Administrator without discussing the decision with the members of the Board."[2] (*Id.* ¶¶ 37–38). A termination letter was given to Plaintiff on June 6, 2023, and his termination was effective June 26, 2023 (*Id.* ¶¶ 37, 41). Plaintiff asserts he was under no obligation to discuss his hiring decision with the Board, that the termination was without just cause, and that he was terminated because of his decision to hire a Caucasian Assistant County Administrator. (*Id.* ¶¶ 33, 39). This dispute as to whether Plaintiff was required to discuss his employment decisions with the Board raises a material dispute of fact which the Court must consider relative to Defendants' assertion that the 2023 Employment Agreement was *ultra vires* and void.

According to Plaintiff, Defendants determined that Plaintiff was entitled to "be paid all salary, benefits, and accrued leave to which he is entitled through June 26, 2023." (*Id.* ¶ 40). Following his termination, Defendants also began paying Plaintiff the special retirement benefits and health care benefits which Plaintiff contends were due under Section 2(E) of the 2023 Employment Agreement and to which Plaintiff asserts he was entitled. (*Id.* ¶¶ 41, 45). Defendants admit that Plaintiff received early pension payments and retirement health care coverage for a period of time beginning in July 2023. However, Defendants contend that such payments were improper because Plaintiff was not entitled to them and their allowance was contrary to and against the requirements of the respective plans. (Doc. 15 ¶ 45).

On April 16, 2025, after Plaintiff filed this lawsuit, Defendants terminated Plaintiff's early retirement benefits, allegedly in retaliation for Plaintiff filing this action and raising complaints of discrimination. (*Id.* ¶ 43).

**B. Relevant Provisions of the 2023 Employment Agreement**

The 2023 Employment Agreement provides in relevant part that:

> A. Employer agrees to employ Michael A. McCoy as County Administrator of Dougherty County, Georgia to perform the functions and duties specified in

[2] The Defendant Commissioners had initially voted to terminate Plaintiff on May 22, 2023. However, this initial vote was invalid because it was made off the record in violation of the Dougherty County Code of Ordinance. (Doc. 22 ¶ 35). Defendants dispute that the initial vote was invalid because it was off the record or in violation of the Dougherty County Code. (Doc. 15 ¶ 38). Rather, Defendants state the initial vote was formally withdrawn because of a procedural deficiency in that the termination vote was not placed on the published agenda. (*Id.*).

> the Code of Ordinances of Dougherty County Georgia and to perform other legally permissible and proper duties and functions *without interference*.
>
> . . . .
>
> C. Specifically, it shall be the duty of the Employee to employ on behalf of the Employer all other employees of the organization consistent with the policies of the governing body and the ordinances of the Employer.
>
> D. It shall also be the duty of the Employee to direct, assign, reassign and evaluate all of the employees of the Employer consistent with policies, ordinances, state and federal law.
>
> E. It shall also be the duty of the Employee to organize, reorganize and arrange the staff of the Employer and to develop and establish internal regulations, rules and procedures which the Employee deems necessary for the efficient and effective operation of the Employer consistent with the lawful directives, policies, ordinances, state and federal law.

(2023 Emp. Agreement, Sec. 1, ¶¶ A, C–E (emphasis added)). With respect to termination and severance pay, the 2023 Employment Agreement provides:

> A. In the event Employee is terminated by Employer before expiration of the aforesaid term of employment for reasons other than "just cause", then in that event, Employer agrees to pay Employee a lump sum cash payment equal to twelve months aggregate salary, and twelve months for Employee's cost of insurance continuation as a retiree of the Employer. . . .
>
> . . . .
>
> E. . . . In the event of either non-voluntary termination, voluntary separation or nonrenewal of the within Employment Agreement prior to age 55 and 25 years of service County Administrator will receive an immediate special retirement benefit equal to his full accrued retirement benefit earned up to the date of either termination or non-renewal and calculated with service to age 55 payable immediately without reduction for early retirement in the form of the basic monthly retirement benefit or other optional form of payment allowable under the Plan and receive insurance continuation as a retiree under the Dougherty County Group Health Plan.

(2023 Emp. Agreement, Sec. 2, ¶¶ A, E).

## IV. LAW AND ANALYSIS

Defendants assert they are entitled to judgment on the pleadings because each of Plaintiff's claims is entirely dependent upon the validity and enforcement of the 2023 Employment Agreement. Defendants contend such agreement was void at its inception because it (1) did not comply with the Dougherty County Georgia – Code of Ordinances

("Ordinance(s)") and it included additional benefits and compensation that far exceeded those referenced in the Dougherty County policies, rules, and regulations, (2) violated Georgia Code § 36-30-3(a) because it was executed by the 2022 Board of Commissioners which was without authority to bind the 2023 Board to the terms of the 2023 Employment Agreement, and (3) it violated the Gratuities Clause of the Georgia Constitution. The Court reviews each of these arguments and Plaintiff's response thereto in turn.

**A. Dougherty County Georgia – Code of Ordinances**

First the Court considers whether it is appropriate for it to use its discretion to take judicial notice of various Dougherty County Ordinances which the parties cite in their pleadings and in the documents relative to the motion before the Court. While both parties apparently consider the cited Ordinances to be central to the issues in this case, neither party requested the Court take judicial notice of the Ordinances. Nor did they provide certified copies of the Ordinances, verification that the quoted versions of the Ordinances were those in effect at the relevant time, or the source(s) from which they obtained the quotes of their version of the Ordinances. The Federal Rules of Evidence provide:

> The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
>
> . . .
>
> The court . . . may take judicial notice on its own; or . . . must take judicial notice if a party requests it and the court is supplied with the necessary information.

Fed. R. Evid. 201(b), (c)(2). The Eleventh Circuit has stated that

> While a court has wide discretion to take judicial notice of facts, *see* Fed. R. Evid. 201(c), the taking of judicial notice of facts is, as a matter of evidence law, a highly limited process. The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court.

*Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1204–05 (11th Cir. 2004) (cleaned up). With respect to ordinances of Georgia cities, counties, or municipalities, the Supreme Court of Georgia has stated that "[i]t is well established by numerous decisions of this court that judicial notice cannot be taken by the superior court or this court of city or county ordinances, but they must be alleged and proved." *Thorsen v. Saber*, 701 S.E.2d 133, 134 (Ga.

2010).[3] Likewise, before taking judicial notice of ordinances, some district courts in this Circuit have also required that certified copies of such ordinances be in the court record before taking judicial notice thereof. *See Broughton v. Brewer*, 298 F. Supp. 260, 265–66 (S.D. Ala. 1969) (finding that "[t]he pleadings and evidence being wholly lacking of any official or certified copy of the relevant ordinances under attack, we conclude that we are legally precluded in the absence of statutory authorization from taking judicial notice of such ordinances."); *Isacks v. Walton Cnty.*, No. 3:20CV1472, 2021 WL 5002624, at *2 (N.D. Fla. May 20, 2021) (finding court was required to take judicial notice of county ordinance pursuant to Federal Rule of Evidence 201(c)(2) *where parties requested the court do so and a certified copy of the ordinance was attached to the request* (emphasis added)).

Other courts have taken judicial notice of copies of ordinances attached to motions pursuant to the incorporation-by-reference doctrine or as public records under Federal Rule of Evidence 201. *See Sheets v. Charlotte Cnty.*, No. 2:24-CV-958, 2025 WL 1644084, at *2 (M.D. Fla. June 10, 2025) (taking judicial notice of ordinances attached to defendants' motion to dismiss pursuant to the incorporation-by-reference doctrine); *Paez v. Long*, No. 1:24-CV-5780, 2026 WL 908551, at *5 n. 25 (N.D. Ga. Mar. 30, 2026) (*sua sponte* taking judicial notice of DeKalb County Ordinance under Fed. R. Evid. 201 as public record whose accuracy cannot be questioned and citing website where such ordinance could be found); c*f. Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (finding that information from a state court online docket "constitute[s] judicially noticeable facts under Rule 201").

Based on the foregoing, and without a request by either party that the Court take judicial notice of any Ordinance and without either party producing certified copies of the complete text of cited Ordinances, or providing citations to the source of such Ordinances, the Court, in the exercise of its discretion, declines to take judicial notice of any Ordinance. Thus, the Record is incomplete, and the Court is unable to consider either parties' argument that the terms of the 2023 Employment Agreement are permitted or prohibited by the Dougherty County Georgia – Code of Ordinances.[4] As such, Defendants failed to show that

[3] *See also* Ga. Code Ann. § 24-2-221 (certified copy of ordinance "shall be self-authenticating and shall be admissible as prima-facie proof of any such ordinance or resolution before any court or administrative body.").

[4] For instance, the Defendants contend that none of the early retirement benefits provided to Plaintiff in his 2023 Employment Agreement are authorized by the Ordinances or Dougherty County Policy. Plaintiff counters

there are no material facts in dispute as to the issue of invalidity of the 2023 Employment Agreement based on noncompliance with the Dougherty County Georgia – Code of Ordinances.

**B. Georgia Code**

Defendants next contend that the 2023 Employment Agreement is void because it violates Georgia Code § 36-30-3 which provides that "[o]ne council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government." Ga. Code Ann. § 36-30-3(a). The intent of § 36-30-3 is to allow "future municipal governments to legislate freely in matters such as operating budgets. To the extent that a governmental contract impinges on a municipality's ability to legislate freely, the contract is ultra vires and void." *Unified Gov't of Athens-Clarke Co. v. Stiles Apartments, Inc.*, 764 S.E.2d 403, 407 (Ga. 2014) (citation and internal quotation marks omitted). The statute "applies equally to both the enactment of ordinances and the execution of governmental contracts." *City of McDonough v. Campbell*, 710 S.E.2d 537, 538 (Ga. Ct. App. 2011).

Plaintiff states that § 36-30-1 provides that "[w]herever the words 'city,' 'town,' 'municipality,' or 'village' appear in the statutory laws of this state, . . . such words shall be held to mean a municipal corporation as defined by statutory law and *judicial interpretation*." Ga. Code Ann. § 36-30-1 (emphasis added). Therefore, Plaintiff argues, that § 36-30-3 does not apply, because Dougherty County is not a municipal corporation.

However, the Georgia Supreme Court's decision in *Madden v. Bellew*, 397 S.E.2d 687 (Ga. 1990), put the question of applicability of § 36-30-3 to counties to rest. Although noting that § 36-30-3 is in a portion of the Georgia Code reserved for "Provisions Applicable to Municipal Corporations Only," the Georgia Supreme Court stated "[w]e hold . . . that the *principle stated in O.C.G.A. § 36–30–3 applies to counties as fully as it applies to municipalities*." *Madden*, 397 S.E.2d at 688 & n.1 (emphasis added) (reviewing history of statute and its applicability to counties).

---

that there is nothing in the Ordinances that prevents such contractual provisions. Defendants also contend that the Ordinances require the county administrator to be appointed in January of each year for a one-year term. Plaintiff counters that the Ordinances are silent as to when the Board can execute an employment contract with the county administrator.

The parties agree that Chairman Heard was not a member of the 2022 Board that voted to hire Plaintiff for a term beginning December 12, 2022, and ending December 31, 2023. As such Chairman Heard did not vote on the salary or other benefits that encompassed Plaintiff's compensation package which, Defendants argue, included an expensive severance and multi-year retirement compensation package that would negatively impact Dougherty County's 2023 budget. Defendants contend this action violated § 36-30-3.

There are four questions to consider when determining whether a municipal contract is prohibited under § 36-30-3, those are:

> (1) Is the contract governmental in nature and hence subject to the prohibition, or proprietary and hence not subject to the prohibition? (2) If governmental in nature, is the contract subject to an exception? (3) If not, is the contract subject to ratification and has it been ratified? (4) If not, is the municipality estopped from relying on the statutory prohibition?

*Unified Gov't of Athens-Clarke*, 764 S.E.2d at 408. Based on *Madden*, the Court finds that § 36-30-3(a) applies to counties. The Court also finds that the salary and severance package awarded to Plaintiff in the 2023 Employment Agreement is a budgetary issue affecting the 2023 Board. *See e.g.*, *Byrd v. City of Pooler*, 175, 918 S.E.2d 360, 364 (Ga. Ct. App. 2025), *cert. denied* (Ga. Feb. 17, 2026) (finding "[a] contract related to the separation of a City employee involves the City's governmental functions.").

Defendants contend that the 2023 Employment Agreement cannot be ratified because the 2022 Board did not have authority to enter into the agreement in December 2022. In support of this argument, the Board argues that the Dougherty County Code provides that the county administrator shall be appointed in January of each year for a term of one year. They further assert that none of the severance, retirement, or heath care benefits provided for in the 2023 Employment Agreement are authorized by any local ordinance or Dougherty County policy. Plaintiff counters that there is nothing in the Ordinances that prevents such contractual provisions, and that the Ordinances are silent as to when the Board can execute an employment contract with the county administrator. These are material questions of fact that are in dispute.

In addition, Plaintiff asserts that the 2023 Employment Agreement was ratified by the 2023 Board performing under the agreement until Plaintiff was terminated effective June 26,

2023. More significantly, Plaintiff notes that the 2023 Board paid him the severance benefits due under the 2023 Employment Agreement for almost two years after his termination, or until April 2025 when he filed this action. Plaintiff asserts these actions constitute ratification of the 2023 Employment Agreement.

As previously discussed, the provisions of the Dougherty County Code are not properly in the Court Record. Thus, the provisions and interpretation of any relevant Ordinances and the question of the 2022 Board's authority thereunder cannot be determined at this time. On the Record before it, the Court is unable to determine whether the 2023 Employment Agreement is subject to exceptions, whether it is subject to ratification, or whether Dougherty County is estopped from relying on the statutory prohibition. These matters also sound as material questions of fact, subject to dispute.

Accordingly, Defendants failed to show that there are no material facts in dispute as to the issue of invalidity of the 2023 Employment Agreement because it impinges on a municipality's ability to legislate freely in violation of Georgia Code § 36-30-3.

**C. Georgia Constitution**

The Gratuities Clause of the Georgia Constitution provides, in pertinent part, that "the General Assembly shall not grant or authorize extra compensation to any public officer, agent, or contractor after the service has been rendered or the contract entered into." Ga. Const. art. III, § 6, ¶ VI (a)(2). Defendants contend that the severance payments, special early retirement, and health care benefits awarded to Plaintiff in the 2023 Employment Agreement upon his termination constitute extra payments in violation of the Gratuities Clause. They assert Dougherty County received no benefit for this additional unauthorized compensation. Plaintiff counters that severance provisions are regularly used by state and local governments to attract and retain competent employees and that the post-termination benefits he received were not gifts or extra compensation, but benefits for which he contracted and earned. *See Gateway Cmty. Serv. Bd. v. Bonati*, 816 S.E.2d 743, 748 (Ga. Ct. App. 2018) (employee's post-retirement benefits were not a gratuity under the Georgia Constitution but part of the compensation for which he contracted); *Swann v. Bd. of Trs. of Joint Mun. Employees' Benefit Sys.*, 360 S.E.2d 395, 397 (Ga. 1987) (stating that if an employment agreement provides in advance that the employee will receive a salary and that at the conclusion of his employment, he will

receive $500 per month for life, such monthly payment is not a gift, but part of the consideration supporting the employment contract).

Based on the foregoing, the Gratuities Clause, without more, does not prohibit payment of post-retirement, or post-termination benefits that are contracted for in advance. As noted regarding previous issues, material facts are in dispute. Accordingly, Defendants' argument that the 2023 Employment Agreement violates the Gratuities Clause of the Georgia Constitution as a matter of law is without merit.

## V. CONCLUSION

Upon a full review of the pleadings, the Parties' briefs, and the Record in this matter, and for the reasons stated above, Defendants' Motion for Judgment on the Pleadings (Doc. 23) is **DENIED**.

**SO ORDERED**, this 8th day of September 2026.

**/s/W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**